UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL CABRERA-TRILLO,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, et. al.,<br><br>　　　　　　　　　　Respondents. | Case No.: 3:25-cv-02865-CAB-MSB<br><br>**ORDER:**<br>**1) PARTIALLY GRANTING PETITIONER'S APPLICATION FOR TEMPORARY RESTRAINING ORDER [Doc. No. 2];**<br><br>**2) TO SHOW CAUSE RE: INJUNCTION; AND**<br><br>**3) SETTING HEARING ON PETITION AND INJUNCTION**<br><br>[Doc. No. 2] |

　　Before the Court is Miguel Cabrera-Trillo's ("Petitioner") petition for a temporary restraining order, [Doc. No. 2 ("TRO")], pending a decision on his petition for a writ of habeas corpus under 28 U.S.C. § 2241. [Doc. No. 1 ("Petition").] For the following reasons, the Court **PARTIALLY GRANTS** the temporary restraining order and **ORDERS** Petitioner immediately released from U.S. Immigration and Customs Enforcement ("ICE") detention.

## I. BACKGROUND

Petitioner is a citizen and national of Cuba. [Petition at 2.] He came to the United States as a refugee on May 7, 1980. [*Id.*; Doc. No. 9 at 2.] He later became a Lawful Permanent Resident ("LPR") retroactive to May 19, 1980. [*Id.*] On November 7, 1997—after a California state drug-related conviction—Petitioner was ordered removed from the United States to Cuba. [Doc. No. 9-1 at ¶¶ 5–6.] All parties waived appeal. [*Id.*]

Petitioner has spent at least 22 months in immigration detention since 1997. After his November 1997 order of removal, he spent fifteen months in immigration detention until he was released on February 11, 1999 on an Order of Supervision ("OSUP"). [*Id.* at ¶ 7.] Petitioner was later re-detained and spent four months in detention from February 18 to June 18, 2003, when he was released "due to [the government] being unable to remove Petitioner from the United States because the Country of Cuba would not issue travel documents." [*Id.* at ¶ 7.] And most recently, Petitioner was put in detention on August 29, 2025 and has spent almost three months in detention. [*Id.* ¶¶ 8.] At that time, Respondents served Petitioner with a Notice of Revocation of Release, a Form I-200 (Warrant of Arrest of Alien), a Form I-205 (Warrant of Removal/Deportation), and a Form I-294 (Warning to Alien Ordered Removed or Deported). [*Id.* at ¶ 8.]

Respondent admits that the government recently tried to secure Petitioner's removal to Cuba but was informed on October 31, 2025 that the Government of Cuba declined to accept him for repatriation. [Doc. No. 9-1 at ¶ 11.] Respondents now "will work to locate a third country for resettlement to effect Petitioner's removal to a third country" and will notify Petitioner if a third country accepts him. [*Id.* at ¶ 12.] Respondents also declare that "[i]f the Petitioner claims fear of return to this third country, he will be referred for a reasonable fear interview with an asylum officer." [*Id.*]

## II. LEGAL STANDARD

The legal standard for issuing a TRO is essentially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,

1  240 F.3d 832, 839 n.7 (9th Cir. 2001).  In the Ninth Circuit, "[a] party seeking a preliminary
2  injunction must meet one of two variants of the same standard."  *All. for the Wild Rockies*
3  *v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).  Under the *Winter* standard, a party is entitled
4  to a preliminary injunction if he demonstrates (1) that he is likely to succeed on the merits,
5  (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that
6  the balance of equities tips in his favor, and (4) that an injunction is in the public interest.
7  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  A party must make a showing
8  on all four prongs.  *See A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d
9  1166, 1167 (9th Cir. 2018).

Under the Ninth Circuit's "serious questions" test, "a sliding scale variant of the *Winter* test," a party is "entitled to a preliminary injunction if it demonstrates (1) serious questions going to the merits, (2) a likelihood of irreparable injury, (3) a balance of hardships that tips sharply towards the [petitioner], and (4) the injunction is in the public interest."  *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (internal quotation marks omitted).  "[I]f a [petitioner] can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the [petitioner's] favor, and the other two *Winter* factors are satisfied."  *All. for the Wild Rockies*, 865 F.3d at 1217 (internal quotation marks omitted).

## III. DISCUSSION

### A. Detention

Petitioner asserts that he is unlawfully detained under 8 U.S.C. § 1231(a)(1)(A) (proscribing 90 days detention post-removal order) or *Zadvydas v. Davis*, 533 U.S. 678 (2001).  Respondents argue that the period for the government to detain Petitioner for removal either under § 1231(a)(1)(A) or *Zadvydas* has not elapsed because Petitioner was detained on August 29, 2025. [Doc. No. 9 at 4–5.]  The Court disagrees with Respondents.

///

///

### 1. Likelihood of Success

As relevant here, 8 U.S.C. § 1231(a)(1)(A) provides a 90-day removal period that begins when the order of removal becomes administratively final. Petitioner was first ordered removed on November 7, 1997 and because both parties waived the right to appeal, that order of removal became administratively final the same day. *See* 8 C.F.R. § 1003.39; 8 C.F.R. § 1241.1. Since then, the government has detained Petitioner for nearly two years in total—far longer than either 8 U.S.C. § 1231(a)(1)(A) proscribes or would be presumptively reasonable under *Zadvydas*.

Under *Zadvydas*, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute [8 U.S.C. § 1231(a)(6)]." 533 U.S. at 699. The Petitioner has the initial burden to show that (1) he has experienced post-removal order detention for more than *Zadvydas'* six-month presumptively reasonable period of detention and (2) there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 701. Given Petitioner's detention for nearly two years since his final order of removal in November 1997, Petitioner more than meets the first prong. The Court also finds that Petitioner has met the second prong. He has shown that the government could not remove him to Cuba in 1997, 2004, or just last month. All Respondents offer to rebut Petitioner's showing is that as of two weeks ago, they now "will work to locate a third country for resettlement[.]" [Doc. No. 9-1 at ¶ 12.]

The time to keep Petitioner in detention for purposes of removal, either under the statutory 90-day removal period or the 6-month *Zadvydas* presumption, has long passed. This factor strongly favors Petitioner.

### 2. Irreparable Harm

Under the second *Winter* factor, the Court considers whether Petitioner is "likely to suffer irreparable harm in the absence of [injunctive] relief." *Winter*, 555 U.S. at 20. Petitioner argues that he is experiencing unlawful detention and "is almost 69 years old and has numerous medical issues." [TRO at 5.] Respondents do not contest this argument;

instead, Respondents argue that Petitioner's alleged irreparable harm is a mere "possibility" and not an "immediate threatened injury," as required. [Doc. No. 9 at 10.]

There is no dispute that Respondents can promise nothing more than starting the process to even identify a third country for removal. Absent the Court's intervention, Petitioner will remain in detention seemingly indefinitely. Given the Court's finding that Petitioner is likely to succeed on at least one of his claims, Plaintiffs have established an irreparable harm in the form of unlawful detention. Therefore, the second *Winter* factor favors Petitioner.

### 3. Balance of Equities and Public Interest

When the government is an involved party, the third and fourth *Winter* factors—the balance of the equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Petitioner argues that these factors favor him because "the risk of harm to Petitioner far outweighs the government's interest in illegally detaining him[.]" [TRO at 6.] Respondents argue that there is significant public interest in the timely execution of immigration laws and removal orders. [Doc. No. 9 at 11–12.]

"[I]t would not be equitable or in the public's interest to allow . . . [violation of] the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). "On the contrary, the public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights." *Id.* (alteration in original) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Moreover, Respondents have presented no evidence to support that Petitioner has not or will not cooperate in the timely execution of his removal if he is not in Respondents' custody. The Court therefore finds that the third and fourth *Winter* factors support injunctive relief.

///
///
///

### B. Third Country Removal

Now that Cuba has refused Petitioner's repatriation, Respondents have indicated that they will attempt to remove Petitioner to some other, as-yet unidentified country pursuant to 8 U.S.C. § 1231(b)(2). [Doc. No. 9-1 at ¶ 12.] Petitioner argues that Respondents may not do so without giving him adequate notice and an opportunity to be heard regarding the potential for persecution, torture, or death in that country. [Petition at 20–21.]

There is no evidence before the Court that if a third country is identified, Respondents will contravene Ninth Circuit precedent requiring Petitioner to be notified that he may apply for withholding of removal to that third county. *See, e.g.*, *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). Indeed, Respondents have stated the opposite, which is that "[i]f the Petitioner claims fear of return to this third country, he will be referred for a reasonable fear interview with an asylum officer." [Doc. No. 9-1 at ¶ 12.] It is thus premature on the current record for this Court to order injunctive relief related to Petitioner's potential future removal to an unidentified third country. The Court **DENIES** Petitioner's TRO on this issue.

### C. Bond

A court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted) (emphasis in original). If there is no realistic likelihood of harm to the defendant from enjoining the disputed conduct, "the district court may dispense with the filing of a bond[.]"

*Id.* Given that Respondent has not argued that complying with the TRO will be costly, the Court **DECLINES** to set bond.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** that:

1. Respondents immediately release Petitioner from ICE custody, and for the 14 days following this order that Petitioner remain under the same conditions as his last release from immigration custody

2. Respondents **SHOW CAUSE** why, after this 14-day period, Petitioner's release should not continue under the same conditions as his last release from immigration custody. Respondents shall file the response to this order to show cause on or before **November 24, 2025**, and Petitioner may file any reply on or before **December 1, 2025 at 12:00 p.m.**

3. The parties must appear on **December 2, 2025 at 10:30 a.m.** for a hearing on the Court's order to show cause and on the merits of the Petition. [Doc. No. 1.] Because both parties addressed the motion for TRO and Petition in their respective briefing on the TRO, [*see* Doc. No. 9 at 2; Doc. No. 10 at 3–5], no additional briefing shall be submitted on the Petition.

It is **SO ORDERED.**

Dated: November 18, 2025

Hon. Cathy Ann Bencivengo
United States District Judge